IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HUSBAND JONES and WIFE JONES, on behalf of themselves and as Parents and Natural Guardians on behalf of DAUGHTER JONES, a Minor,<br><br>   Plaintiffs,<br><br>v.<br><br>STEPHEN G. DIAMONTONI, M.D. & ASSOCIATES FAMILY PRACTICE, DR. JEFFREY T. TROST, and DR. WILLIAM R. VOLLMAR,<br><br>   Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

### INTRODUCTION AND BACKGROUND STATEMENT

1. Plaintiffs Husband Jones and Wife Jones,[1] on behalf of themselves, and as Parents and Natural Guardians on behalf of Daughter Jones, a minor (collectively "Plaintiffs"), through their undersigned counsel, respectfully file this complaint against Defendants Stephen G. Diamontoni, MD & Associates Family Practice, Dr. Jeffrey T. Trost, and Dr. William R. Vollmar (collectively "Defendants"), seeking all available

---

[1] Pseudonyms have been used in place of Plaintiffs' full names due to privacy concerns. Local Rule 5.1.3 permits modification of Daughter Jones's full name as a minor child. Plaintiffs will file an unopposed motion requesting that Husband Jones and Wife Jones proceed under pseudonym because they have a reasonable fear of severe harm occurring to Daughter Jones should her father's HIV status be revealed. *See Doe v. Megless*, 654 F.3d 404, 408-9 (3d. Cir. 2011) (endorsing a non-comprehensive balancing test, which balances, "...whether a litigant has a reasonable fear of severe harm that outweighs the public's interest in open litigation," and including AIDS as an example of an area where courts have permitted plaintiffs to proceed with pseudonyms).

1

relief under Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12181, *et seq.*, and applicable state law.[2]

2. As explained more fully below, this action stems from Defendants' discriminatory dismissal of Plaintiffs from the Diamontoni & Associates Family Practice because of Husband Jones' disability, HIV.

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction over the subject matter of Plaintiffs' claims under the Americans with Disabilities Act ("ADA") pursuant to 28 U.S.C. § 1331.

4. This action is authorized by 42 U.S.C. § 12188.

5. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to Plaintiffs' federal claims they form part of the same case or controversy.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this district, and because a substantial part of the events giving rise to the claims alleged herein occurred in this judicial district.

## PARTIES

7. Plaintiff, Husband Jones ("Husband"), is an adult individual and resides in Lancaster County in this judicial district.

8. Plaintiff, Wife Jones ("Wife"), is an adult individual and resides in Lancaster County in this judicial district.

---

[2] Plaintiffs filed an administrative charge against Defendants with the Pennsylvania Human Relations Commission ("PHRC") on April 1, 2014. Plaintiffs will amend the Complaint to include the PHRA causes of action upon proper exhaustion of administrative remedies.

9. Plaintiff, Daughter Jones ("Daughter"), is a minor and resides in Lancaster County in this judicial district.

10. Defendant, Stephen G. Diamontoni, M.D. & Associates Family Practice ("Diamontoni & Associates Family Practice") is a medical practice with five offices in Lancaster County. Plaintiff Husband Jones received health care at the office located at 203 Commerce Drive, Suite G, Quarryville, PA 17566 in Lancaster County.

11. Defendant, Dr. William R. Vollmar ("Dr. Vollmar"), is a primary care physician and a partner at the Diamontoni & Associates Family Practice. Based on information and belief, Dr. Vollmar resides in Lancaster County.

12. Defendant, Dr. Jeffrey T. Trost ("Dr. Trost"), is a primary care physician at the Diamontoni & Associates Family Practice. Based on information and belief, Dr. Trost resides in Lancaster County.

## FACTS

13. Husband is an individual living with HIV, a physical impairment that substantially limits one or more major life activities, including but not limited to his immune system, reproductive system and normal cell growth. Accordingly, he has a disability as defined by 42 U.S.C. §12102 and 28 C.F.R. § 36.104.

14. Wife and Daughter are Husband's wife and child and have a familial relationship or association with Husband Jones. Accordingly, they are individuals protected from discrimination within the meaning of 42 U.S.C. § 12182(E) and 28 C.F.R. § 36.205.

15. Neither Wife nor Daughter is HIV positive.

16. Husband was diagnosed with HIV in 1992. He is compliant with his antiretroviral medications, and his HIV disease has been well-controlled since approximately 2006.

17. Diamontoni & Associates Family Practice is a place of public accommodation, within the meaning of the ADA, as it is "a professional office of a healthcare provider." *See* 42 U.S.C. § 12181(7)(F); 28 C.F.R. § 36.104.

18. Dr. Vollmar is an owner of Diamontoni & Associates Family Practice.

19. Dr. Vollmar is an operator of Diamontoni & Associates Family Practice; he conducts the affairs of Diamontoni & Associates Family Practice and directs the functioning of Diamontoni & Associates Family Practice.

20. Dr. Trost is a primary care physician at the Diamontoni & Associates Family Practice.

21. Dr. Trost is an operator of Diamontoni & Associates Family Practice; he conducts the affairs of Diamontoni & Associates Family Practice and directs the functioning of Diamontoni & Associates Family Practice.

22. In or around June 2013, Husband and his family moved to Lancaster County, Pennsylvania from South Carolina to be near Wife's family.

23. As the Plaintiffs did not have a primary care doctor in the area, Wife's parents recommended the Diamontoni & Associates Family Practice. Husband contacted the practice and the family was assigned to Dr. Trost.

24. Prior to moving to Pennsylvania, Husband arranged for his medical records to be sent to the Diamontoni & Associates Family Practice.

25. Husband saw Dr. Trost at scheduled office visits in June, July and August, 2013. At each visit, they discussed Husband's medications and lab results. Prior to each visit, Husband's blood was drawn at locations other than a Diamontoni & Associates Family Practice office, by health care providers unaffiliated with the Diamontoni & Associates Family Practice

26. On October 4, 2013, Husband had his blood drawn at the Diamontoni & Associates Family Practice, Quarryville office. This was the first time the Diamontoni & Associates Family Practice drew Husband's blood.

27. The phlebotomist at the Diamontoni & Associates Family Practice drew Husband's blood and applied a band-aid, consistent with protocol for this procedure.

28. After the blood draw, Husband used the restroom and proceeded to the receptionist desk to check out. He made small talk with the receptionist about his dogs.

29. Before leaving the office, Husband returned to the restroom to retrieve a cup he had left behind.

30. Husband then walked by the receptionist desk for the second time since the blood draw and left the office without incident.

31. Four days later, Husband returned to the Diamontoni & Associates Family Practice on October 8, 2013 for the scheduled follow up on his blood-work. He met with Dr. Trost and had a routine discussion about his lab results.

32. At the end of the visit, Dr. Trost said, "let's talk about the restroom," and handed Husband an envelope. Inside was a letter from the Diamontoni & Associates Family Practice, dated October 4, 2013 and signed by Dr. William R. Vollmar.

33. The letter stated as follows:

5

>Dear [Husband]:
>
>I understand you were in the office today for bloodwork. Afterwards you used the bathroom and apparently left a large amount of blood all over the sink, walls and floor. With your current medical state this is obviously a risk the people in the office, patient and employee alike [sic]. We feel since you are knowledgeable of your diagnosis that this behavior is inappropriate. Because of this, we are going to be asking you to leave the practice. You have 30 days to find another physician. Unfortunately this dismissal stands for all members of your family as well. We will only be available for emergency visits for the next 30 days from the date of this letter. We are sorry to have to part ways in this situation but it seems you may not have appropriate concern for those who would like to take care of you and those around you.
>
>Sincerely,
>
>William R. Vollmar, M.D.

A true and correct copy (redacted to protect the identity of the Plaintiffs) of the letter is attached hereto as Exhibit A.

34. Husband was incredulous. He knew he had not left a "large amount of blood all over the sink, walls and floor of the bathroom." He was not bleeding after the blood draw. He had done nothing to cause himself to bleed while in the bathroom, and he was not bleeding while chatting with the receptionist.

35. Even though he walked past the receptionist's desk twice, no one at the Diamontoni & Associates Family Practice mentioned he was bleeding, let alone enough to leave a "large amount of blood in the bathroom."

36. No one from the Diamontoni & Associates Family Practice called Husband after his visit to inquire whether he was experiencing any clinical complications, despite the claim that a large amount of blood was found after he left.

37. Husband was greatly offended by the letter, which claimed that he did "not have appropriate concern" for those around him. Husband lives with his HIV negative wife and child, and is cautious and aware of how HIV is transmitted. He would never put anyone at risk of infection.

38. Husband protested to Dr. Trost, who directed him to the office manager. Husband spoke to the receptionist, who told him the office manager was not available, and he should bring his concerns to Dr. Trost, who no longer had time to see him.

39. Husband left the office in a state of shock and confusion. Before moving to Pennsylvania, he proactively contacted the Diamontoni & Associates Family Practice to transfer his and his family's care, to ensure the availability of healthcare upon their arrival. He would not have done anything to jeopardize his family's care or his own.

40. Later that day, Husband received a call from the receptionist at the Diamontoni & Associates Family Practice, who stated the decision to dismiss Husband, Wife and Daughter was final.

41. Defendants did not want Husband and his family as patients because of his HIV status. As a pretext to dismiss the Jones family as patients, Defendants sent or caused to be sent a letter that contained false allegations.

42. Defendants discriminated against Plaintiffs by denying Plaintiffs the opportunity to participate in or benefit from the "the goods, services, facilities, privileges, advantages, or accommodations" of the Diamontoni & Associates Family Practice in violation of the ADA.

43. As a result of Defendants' refusal to treat Husband, Wife and Daughter, the entire family suffered humiliation, emotional distress, frustration, anxiety, difficulties

in locating a new primary care physician and transferring medical records, and expenses related to traveling farther to receive health care.

## COUNT I

**UNLAWFUL DISCRIMINATION IN PUBLIC ACCOMODATIONS BASED ON DISABILITY IN VIOLATION OF THE AMERICANS WITH DIABILITIES ACT, 42 U.S.C. § 12182 *ET SEQ.*; 28 C.F.R. § 36.102 *ET SEQ.*
(By Husband Jones Against All Defendants)**

44. All previous paragraphs are incorporated as though fully set forth herein.

45. Title III of the Americans with Disabilities Act (ADA) prohibits discrimination against individuals on the basis of disability in the full and equal enjoyment of the services of any place of public accommodation. 42 U.S.C. § 12182, *et seq.*; 28 C.F.R. § 36.102, *et seq.*

46. At all relevant times, Husband has had a physical impairment (HIV) that substantially limits the operation of his major bodily functions, such as his immune system, reproductive system, and normal cell growth, as well as substantially limiting other major life activities, such that he is an individual with a disability within the meaning of the ADA, 42 U.S.C. §12102; 28 C.F.R. § 36.104.

47. In addition, Defendants regarded Husband as an individual with a handicap or disability within the meaning of the ADA, 42 U.S.C. § 12102; 28 C.F.R. § 36.104.

48. Husband was denied "the goods, services, facilities, privileges, advantages, or accommodations" of a public accommodation when he dismissed from the Diamontoni & Associates Family Practice on the basis of his disability, HIV, in violation of 42 U.S.C. § 12182(a) and 28 C.F.R. § 36.201(a).

49. Diamontoni & Associates Family Practice denied Husband the medical services of the Diamontoni & Associates Family Practice because of Husband's physical disability, specifically his HIV infection, in violation of 42 U.S.C. §12102 *et seq.* and 28 C.F.R. § 36.102 *et seq.*

50. Dr. Vollmar denied Husband the medical services of the Diamontoni & Associates Family Practice because of his disability, specifically his HIV infection, in violation of 42 U.S.C. §12102 *et seq.* and 28 C.F.R. § 36.102 *et seq.*

51. Dr. Vollmar was acting as an owner and operator of Diamontoni & Associates Family Practice and conducting the affairs of Diamontoni & Associates Family Practice when he wrote, signed and issued the letter denying Husband medical services.

52. As an owner and operator of Diamontoni & Associates Family Practice, Dr. Vollmar is subject to individual liability for discrimination by public accommodations under 42 U.S.C. § 12182(a) and 28 C.F.R. § 36.201(a).

53. Dr. Trost denied Husband the medical services of the Diamontoni & Associates Family Practice because of Husband's disability, specifically his HIV infection, in violation of 42 U.S.C. §12102 *et seq.* and 28 C.F.R. § 36.102 *et seq.*

54. Dr. Trost was acting as an operator of Diamontoni & Associates Family Practice and conducting the affairs of Diamontoni & Associates Family Practice when he denied Husband medical services by handing him a letter of dismissal and engaging in a contemporaneous conversation confirming the dismissal at his last appointment on October 8, 2013.

55. As an operator of Diamontoni & Associates Family Practice, Dr. Trost is

subject to individual liability under 42 U.S.C. § 12182(a) and 28 C.F.R. § 36.201(a).

56. Defendants' discrimination directly and proximately caused Husband to sustain severe and lasting emotional and psychological harm.

57. Plaintiff seeks immediate injunctive relief pursuant to 42 U.S.C.A. § 12188(a)(2).

**COUNT II**
**UNLAWFUL DISCRIMINATION IN PUBLIC ACCOMMODATION BASED ON ASSOCIATION WITH A PERSON WITH A DISABILITY IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12182(E); 28 C.F.R. § 35.205**
(By Plaintiffs Wife Jones and Daughter Jones Against All Defendants)

58. All previous paragraphs are incorporated as though fully set forth herein.

59. Wife was dismissed from the practice without justification in violation of 42 U.S.C. § 12182(E) and 28 C.F.R. §36.205, which prohibit a "public accommodation" from "deny[ing] equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association."

60. Daughter was dismissed from the practice without justification in violation of 42 U.S.C. § 12182(E); 28 C.F.R. §36.205, which prohibits a "public accommodation" from "deny[ing] equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association."

61. Diamontoni & Associates Family Practice denied Wife and Daughter the medical services of the Diamontoni & Associates Family Practice because of their

association with Husband, a person with HIV, in violation of 42 U.S.C. § 12182(E); 28 C.F.R. §36.205.

62. Dr. Vollmar denied Wife and Daughter the medical services of the Diamontoni & Associates Family Practice because of their association with Husband, a person with HIV, in violation of 42 U.S.C. § 12182(E); 28 C.F.R. §36.205.

63. Dr. Vollmar was acting as an owner and operator of Diamontoni & Associates Family Practice and conducting the affairs of Diamontoni & Associates Family Practice when he wrote, signed and issued the letter of dismissal denying Wife and Daughter medical services.

64. As an owner and operator of Diamontoni & Associates Family Practice, Dr. Vollmar is subject to individual liability under 42 U.S.C. § 12182(a) and 28 C.F.R. § 36.201(a).

65. Dr. Trost denied Wife and Daughter the medical services of the Diamontoni & Associates Family Practice because of their association with Husband, a person with HIV, in violation of 42 U.S.C. § 12182(E); 28 C.F.R. §36.205.

66. Dr. Trost was acting as an operator of Diamontoni & Associates Family Practice and conducting the affairs of Diamontoni & Associates Family Practice when he denied Wife and Daughter medical services by handing Husband a letter of dismissal and engaging in a contemporaneous conversation confirming the dismissal on October 8, 2013.

67. As an operator of Diamontoni & Associates Family Practice, Dr. Trost is subject to individual liability under 42 U.S.C. § 12182(a) and 28 C.F.R. § 36.201(a).

68.

69. Defendants' discrimination directly and proximately caused Wife and Daughter to sustain harm.

70. Plaintiffs seek immediate injunctive relief pursuant to 42 U.S.C.A. § 12188(a)(2).

## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**(By HUSBAND and WIFE on behalf of themselves and DAUGHTER against all DEFENDANTS)**

71. All previous paragraphs are incorporated as though fully set forth herein.

72. Defendants' dismissal of Husband on the basis of his HIV status, despite the fact that the medically trained Defendants knew or should have known that his HIV status posed no risk to Defendants' staff or patients as long as standard universal precautions were followed, was extreme and outrageous conduct.

73. Defendants' dismissal of Wife and Daughter on the basis of Husband's HIV status, despite the fact that the medically trained Defendants knew or should have known that Husband's HIV status posed no risk to Defendants' staff or patients as long as standard universal precautions were followed, was extreme and outrageous conduct.

74. Defendants sending or causing to be sent a letter that contained false allegations as a pretext to dismiss the Husband, Wife and Daughter as patients was extreme and outrageous conduct.

75. Defendants asserting in their letter of dismissal that Husband "is obviously a risk the people in the office, patient and employee alike [sic]" and that Husband does "not have appropriate concern for ... those around [him]" was extreme and outrageous conduct.

76. Defendants' conduct intentionally and/or recklessly caused Husband, Wife and Daughter severe emotional distress, because the Plaintiffs' emotional distress was a natural and probable consequence of Defendants' dismissal of the Joneses.

77. Defendants' dismissal caused Husband to feel profoundly humiliated and embarrassed.

78. Defendants' dismissal of Husband caused Wife and Daughter mental anguish, grief, worry and other emotional disturbances beyond what a reasonable person could be expected to endure.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs request the following relief:

   a. A declaratory judgment that the practices complained of herein are unlawful discrimination under the ADA;

   b. Defendants, their agents and employees cease and desist unlawful discriminatory practices;

   c. Defendants, their agents and employees, develop and implement a written anti-discrimination policy, insuring that they will not discriminate against any patient with HIV or any person associated with a patient with HIV in the future;

   d. Defendants, their agents, and employees conduct mandatory training for all staff regarding HIV disease, transmission and universal precautions;

   e. Compensatory and actual damages to Plaintiffs, including those caused by humiliation and embarrassment, in an amount to be determined at trial;

   f. Punitive damages in an amount to be determined at trial;

   g. Costs and reasonable attorney's fees; and

   H. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

13

Plaintiffs request a trial by jury on all matters as to which they are entitled by law.

Respectfully submitted,

Dated: December 1, 2014

*[signature]*

Ronda B. Goldfein (PA 61452)
Adrian M. Lowe (PA 313614)
AIDS LAW PROJECT OF PENNSYLVANIA
1211 Chestnut Street, Suite 600
Philadelphia, PA 19107
215-587-9377 (tel.)
215-587-9902 (fax)

Sarah R. Schalman-Bergen (PA 206211)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
215-875-3053 (tel.)
215-875-4604 (fax)

*Attorneys for Plaintiffs*

# Exhibit A



# STEPHEN G. DIAMANTONI, M.D. & ASSOCIATES
# FAMILY PRACTICE

Stephen G. Diamantoni, M.D.
Howard J. Gerstein, M.D.
William R. Vollmar, M.D.
Jeffrey T. Trost, M.D.
Maria F. Perlis, M.D.
Gail F. Bodner, M.D.
Ankur K. Sadhukhan, M.D.
Madhumita Sadhukhan, M.D.
Hyasmine M. Chatles, M.D.
Joyce A. Vafeas, M.D.
Mark R. Lloyd, D.O.
Steven C. Wilbraham, M.D.
Adrian F. Hazbun, M.D.
Zachary A. Geidel, M.D.
James W. Bounds, PA-C
Cynthia A. Brubaker, PA-C
Michael C. Shipman, PA-C

October 4, 2013



Dear ▮▮▮▮▮:

*Lancaster-Franklin St. Office*
734 North Franklin Street
Lancaster, PA 17602
Phone (717) 295-2323
Fax (717) 295-1349
Billing (717) 295-7109

I understand you were in the office today for bloodwork. Afterwards you used the bathroom and apparently left a large amount of blood all over the sink, walls and floor. With your current medical state this is obviously a risk the people in the office, patient and employee alike. We feel since you are knowledgeable of your diagnosis that this behavior is inappropriate. Because of this, we are going to be asking you to leave the practice. You have 30 days to find another physician. Unfortunately this dismissal stands for all members of your family as well. We will only be available for emergency visits for the next 30 days from the date of this letter. We are sorry to have to part ways in this situation but it seems you may not have appropriate concern for those who would like to take care of you and those around you.

*Quarryville Office*
203 Commerce Drive
Suite G
Quarryville, PA 17566
Phone (717) 786-1202
Fax (717) 786-7758

*Campus Office*
2112 Harrisburg Pike
Suite 3
Lancaster, PA 17604
Phone (717) 431-3000
Fax (717) 431-3010

Sincerely,

*(signature)*

William R. Vollmar, M.D.
WRV/dlf

*Leola Office*
218-C West Main Street
Leola, PA 17540
Phone (717) 656-2331
Fax (717) 656-4669

*Lancaster-Chestnut St. Office*
440 West Chestnut Street
Lancaster, PA 17603
Phone (717) 295-3317
Fax (717) 295-3318

www.diamantoni.com
(Access Patient Portal through website)